# Syllabus

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.

Reporter of Decisions:
Kimberly K. Muschong

PEOPLE v SANDERS

Docket No. 167899. Argued on application for leave to appeal March 12, 2026. Decided July 30, 2026.

In 2013, John H. Sanders was convicted following a jury trial in the Ingham Circuit Court of felony murder and first-degree child abuse. Earlier that year, defendant took his three-month-old daughter to the hospital after she stopped breathing. The examining physician suspected that the child's injuries were the result of inflicted abuse. While the child remained in the hospital in critical condition, defendant agreed to participate in an interview with detectives from the Lansing Police Department. Defendant repeatedly denied responsibility when the officers either implicitly or directly accused him of harming his daughter. The officers arrested defendant without a warrant and kept him in custody, and the child died that evening. The next day, while defendant remained in detention, a doctor performed an autopsy and concluded that the cause of death was a traumatic brain injury and the manner of death was homicide.

Two days later, defendant waived his *Miranda*[1] rights and agreed to speak with a detective. Defendant initially denied harming his daughter but later gave varying explanations for the cause of her injuries, including that he shook her when she would not stop crying. At the time defendant made these statements, he had been detained for at least 64 hours without a judicial determination of probable cause. A magistrate later that day authorized a criminal complaint against defendant upon a finding of probable cause.

In 2019, defendant filed in the trial court a motion for relief from judgment. The court, Rosemarie E. Aquilina, J., granted the motion on the basis that defendant's trial attorney had been ineffective for failing to seek the assistance of a medical expert regarding the child's cause of death. During proceedings before the second trial, an evidentiary hearing was held on the prosecution's motion to admit the statements that defendant had made to the detective; the detective testified that, in 2013, it was his understanding, and the practice of the Lansing Police Department, that a suspect arrested without a warrant had to be brought before a magistrate within 72 hours. The court granted the prosecution's motion, concluding that although defendant was detained in violation of the Fourth Amendment under *Riverside Co v McLaughlin*, 500 US 44

---

[1] *Miranda v Arizona*, 384 US 436 (1966).

(1991)—which held that an unconstitutional seizure occurs when the police detain an individual for more than 48 hours following a warrantless arrest without a neutral magistrate's determination that probable cause exists, unless the prosecution proves the existence of a bona fide emergency or other extraordinary circumstance—the statements were voluntary under the factors outlined in *People v Cipriano*, 431 Mich 315 (1988), and therefore admissible. Defendant sought interlocutory leave to appeal in the Court of Appeals, which denied the application. Defendant sought leave to appeal in the Supreme Court, which ordered and heard oral argument on the application. ___ Mich ___; 18 NW3d 511 (2025).

In an opinion by Justice BOLDEN, joined by Chief Justice CAVANAGH and Justices BERNSTEIN, WELCH, THOMAS, and HOOD, the Supreme Court, in lieu of granting leave to appeal, *held*:

1. Statements made by a detained arrestee while seized in violation of the Fourth Amendment's requirement of a prompt judicial determination of probable cause must be excluded from evidence unless the prosecution establishes that the statements were sufficiently attenuated from the taint of the unconstitutional conduct. Application of the exclusionary rule is appropriate under these circumstances because it would appreciably deter police misconduct. In determining whether suppression is required, a reviewing court should consider whether *Miranda* rights were read, the temporal proximity between the constitutional violation and the challenged statements, the presence of intervening circumstances, and the purpose and flagrancy of the police misconduct. The voluntariness of the statements is a separate threshold inquiry guided by the totality of the circumstances and the factors discussed in *Cipriano* and *People v Stewart*, 512 Mich 472 (2023). While the *Cipriano* factors incorporate the length of detention and the delay in bringing a defendant before a magistrate, they do so only through the lens of determining whether a confession was freely and voluntarily made in the context of the Fifth Amendment, not in the context of the Fourth Amendment. *People v Manning*, 243 Mich App 615 (2000), was overruled to the extent it concluded that *Cipriano*'s totality-of-the-circumstances voluntariness inquiry sufficiently accounts for the Fourth Amendment interests at play when a defendant arrested without a warrant is detained for more than 48 hours without a probable-cause determination.

2. Because the trial court in this case did not consider whether the statements made by defendant were sufficiently attenuated from the taint of the *McLaughlin* violation, the trial court's order granting the prosecution's motion to admit the statements was vacated and the case was remanded for the trial court to apply the appropriate standards. It was uncontested that defendant's right to be free from unreasonable seizure was violated under *McLaughlin* because he was detained for more than 48 hours following a warrantless arrest without receiving a judicial determination of probable cause, and the delay was unjustified. The detective's belief that officers had 72 hours to bring a suspect arrested without a warrant before a judge for a probable-cause determination was contrary to *McLaughlin*'s clear rule, and such a plain legal error is not an extraordinary circumstance justifying delay. An attenuation analysis was appropriate to determine whether the statements made while defendant was wrongfully detained were traceable to the Fourth Amendment violation under *McLaughlin*, or instead whether the taint of illegality had been purged.

Trial court order vacated; case remanded for further proceedings.

Justice ZAHRA, dissenting, disagreed with the majority's conclusion that the exclusionary-rule analysis was required because of the Fourth Amendment *McLaughlin* violation. Instead, the voluntariness inquiry established in *Cipriano* would adequately protect the integrity of the process and the statements obtained during the interrogation. The exclusionary rule is a judicial fiction, created to prospectively protect Fourth Amendment rights by deterring future police misconduct, and the United States Supreme Court has refused to apply this judicially created prophylactic rule whenever the costs of exclusion outweigh its deterrent benefits. Far more suitable remedies were available to defendant than suppression of evidence for the violation of his Fourth Amendment right. These alternative remedies—such as threat of civil liability for violating a suspect's Fourth Amendment rights—would deter wrongful police conduct without imposing the high cost on our criminal justice system of excluding evidence critical to the truth-seeking process of a criminal trial. Justice ZAHRA would not have overruled *Manning* and would have affirmed the trial court's order to admit defendant's inculpatory statements under the voluntariness test supplied by *Cipriano*.

# OPINION

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

FILED  July 30, 2026

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                  No. 167899

JOHN HAROLD SANDERS,

      Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

BOLDEN, J.

This appeal concerns the Fourth Amendment's requirement of a judicial probable-cause determination as a prerequisite to the continued detention of a suspect who is arrested without a warrant.  Under the Supreme Court's ruling in *Riverside Co v McLaughlin*, 500 US 44, 56-57; 111 S Ct 1661; 114 L Ed 2d 49 (1991), an unconstitutional seizure occurs when the police detain an individual for more than 48 hours following such an arrest without a neutral magistrate concluding that probable cause exists, unless the prosecution

proves the existence of a bona fide emergency or other extraordinary circumstance. In this case, everyone agrees that defendant, John Sanders, made statements to police while he was detained in violation of his Fourth Amendment rights under *McLaughlin*. The questions are whether these statements should be suppressed and what standard applies to resolve that determination.

We hold that statements made by a detained arrestee while seized in violation of the Fourth Amendment's requirement of a prompt judicial determination of probable cause must be excluded from evidence unless the prosecution establishes that the statements were sufficiently attenuated from the taint of the unconstitutional conduct. In making this judgment, a reviewing court should consider whether *Miranda*[1] rights were read, the temporal proximity between the constitutional violation and the challenged statements, the presence of intervening circumstances, and the purpose and flagrancy of the police misconduct. The voluntariness of the statements is a separate threshold inquiry guided by the totality of the circumstances and the factors discussed in *People v Cipriano*, 431 Mich 315, 334; 429 NW2d 781 (1988), and *People v Stewart*, 512 Mich 472, 481-482, 495-496; 999 NW2d 717 (2023). Because the trial court did not consider whether the statements made by Sanders were sufficiently attenuated from the taint of the *McLaughlin* violation, we vacate the trial court's order granting the prosecution's motion to admit the statements at issue and remand to that court for further proceedings not inconsistent with this opinion.

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

## I. FACTUAL BACKGROUND

This case arises out of the death of Sanders's three-month-old daughter on Friday, January 4, 2013. Sanders brought the child to the hospital that morning after she stopped breathing. There, the examining physician identified brain injuries that he suspected were indicative of inflicted abuse. While the child remained in the hospital in critical condition, Sanders agreed to participate in an interview with detectives from the Lansing Police Department. During separate questioning by two detectives at the police station, Sanders repeatedly denied responsibility when the officers either implicitly or directly accused him of harming his daughter. Concluding there was probable cause to believe that Sanders had engaged in criminal conduct, officers formally arrested him without a warrant at the end of the interviews and kept him in custody. The child died around the same time as Sanders's arrest on Friday evening. The next day, while Sanders remained in detention, a doctor performed an autopsy on the child. The doctor concluded that the cause of death was a traumatic brain injury and the manner of death was homicide.

On Monday morning, January 7, Detective Mark Lewandowsky was asked by the lead investigators to speak with Sanders because he had not yet been interviewed after the autopsy was completed. Sanders waived his *Miranda* rights and agreed to talk with Detective Lewandowsky. During the first hour or so of the interrogation, Sanders consistently maintained that he did not harm his daughter. Then, after Detective Lewandowsky confronted Sanders with the autopsy results and insisted there was more to the story, Sanders gave varying explanations for the cause of his daughter's injuries. These included statements that the child hit her head on the ceiling after he tossed her in

3

the air; that the child fell onto the bed; and that he shook the child when she would not stop crying.

At the time Sanders made these statements, he had been detained for at least 64 hours and had yet to receive a judicial determination of probable cause. Only later that day did a magistrate authorize a criminal complaint against Sanders upon a finding of probable cause. Detective Lewandowsky would eventually testify that in 2013, it was his understanding, and the practice of the Lansing Police Department, that a suspect arrested without a warrant had to be brought before a magistrate within 72 hours.

At trial in December 2013, a jury convicted Sanders of felony murder and first-degree child abuse. The Court of Appeals affirmed the convictions, and this Court denied leave to appeal. *People v Sanders*, unpublished per curiam opinion of the Court of Appeals, issued April 21, 2015 (Docket No. 320247); *People v Sanders*, 498 Mich 907 (2015). Sanders moved for relief from judgment in 2019, and the trial court granted a new trial on the basis that his trial attorney was ineffective for failing to seek the assistance of a medical expert. The trial court reached this decision following an evidentiary hearing at which two doctors testified that the child's death was likely caused by a severe infection rather than inflicted abuse.

Pretrial proceedings resumed after the prosecution elected to retry Sanders on the charges of open murder and first-degree child abuse. The prosecution moved to admit the statements that Sanders made to Detective Lewandowsky, and Sanders opposed the motion. An evidentiary hearing was held at which Detective Lewandowsky testified and

the interrogation video was played.[2]  After the hearing, the trial court issued a lengthy opinion granting the prosecution's motion, concluding that the statements were voluntary under the factors outlined in *Cipriano*.[3]  The court found that a few *Cipriano* factors— prolonged questioning, length of detention, and the unnecessary delay in bringing Sanders before a magistrate—weighed in favor of exclusion, but it concluded that the totality of the circumstances otherwise supported a finding of voluntariness.  While the court found that Sanders was detained in violation of *McLaughlin* when he made the challenged statements, it noted that the delay was merely one factor in the voluntariness inquiry.

Trial court proceedings were stayed while Sanders pursued an appeal of the decision to admit these statements.  The Court of Appeals denied his application for leave to appeal.  *People v Sanders*, unpublished order of the Court of Appeals, entered November 20, 2024 (Docket No. 371677).  Sanders then sought leave to appeal in this Court; we ordered oral argument on the application and directed the parties to address:

> (1) the proper analysis for determining whether statements made while detained in violation of the Fourth Amendment under *Riverside Co v McLaughlin*, 500 US 44 (1991), should be suppressed; (2) whether *People v Manning*, 243 Mich App 615[; 624 NW2d 746] (2000), was correctly decided; and (3) whether the trial court clearly erred in concluding that the defendant's statements were voluntary.  See *People v Cipriano*, 431

---

[2] Commonly known in Michigan as a *Walker* hearing, this proceeding allows a trial court to receive evidence to determine the voluntariness of incriminating statements made by a defendant.  *People v Walker (On Rehearing)*, 374 Mich 331, 338; 132 NW2d 87 (1965).

[3] These statements were excluded at the first trial by a since-retired judge, but the successor judge determined that she could reconsider the prior judge's ruling.  Sanders does not challenge this authority, so we do not address it.

Mich 315 (1988).  [*People v Sanders*, ___ Mich ___, ___; 18 NW3d 511, 512 (2025).]

## II.  LEGAL BACKGROUND

The Fourth Amendment of the United States Constitution, as applied to the states through the Fourteenth Amendment, protects against "unreasonable searches and seizures."  US Const, Am IV; *People v Cartwright*, 454 Mich 550, 557-558 & n 7; 563 NW2d 208 (1997); see also Const 1963, art 1, § 11.  An arrest is a seizure but one that is generally reasonable if justified by probable cause.  *People v Hammerlund*, 504 Mich 442, 451; 939 NW2d 129 (2019).  Sometimes a lawful arrest requires a warrant.  See, e.g., *Payton v New York*, 445 US 573, 576; 100 S Ct 1371; 63 L Ed 2d 639 (1980) (holding that a warrant is required to make a routine felony arrest inside the home).  An arrest warrant is issued when a magistrate is presented with a sworn complaint alleging the commission of an offense and determines that there is "reasonable cause to believe that the individual accused in the complaint committed that offense."  MCL 764.1a(1).  Other times, like in a public place, the Fourth Amendment permits a warrantless arrest so long as a police officer possesses probable cause.  *Hammerlund*, 504 Mich at 452-453.

For persons arrested without a warrant, the Supreme Court has long held that the Fourth Amendment requires a judicial determination of probable cause "promptly after arrest" as a prerequisite to prolonged detention.  *Gerstein v Pugh*, 420 US 103, 114, 125; 95 S Ct 854; 43 L Ed 2d 54 (1975).  While a police officer's "on-the-scene assessment of probable cause" may justify the initial arrest, it cannot provide the legal basis for sustained pretrial detention.  *Id*. at 113-114.  *Gerstein*'s holding therefore ensures that a warrantless arrest receives the same Fourth Amendment scrutiny that would otherwise precede the

issuance of an arrest warrant—that is, judicial review for probable cause. *Id*. Requiring a neutral magistrate to independently examine the evidence protects the presumptively innocent against "unfounded interference with liberty" and recognizes that "[t]he consequences of prolonged detention may be more serious than the interference occasioned by arrest." *Id*. at 114.

Over time, conflicts arose as to what *Gerstein* meant by a "prompt" probable-cause determination, so the Supreme Court offered guidance in *McLaughlin*. *McLaughlin*, 500 US at 50. That case arose from a class action challenging a California county's policy for providing probable-cause determinations to individuals arrested without a warrant. *Id*. at 47. The Court held that a judicial determination of probable cause made within 48 hours of arrest will generally satisfy *Gerstein*'s promptness requirement. *Id*. at 56. But even a delay of less than 48 hours will not be insulated from constitutional protection if the arrestee can show that the delay was unreasonable. *Id*. "Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake." *Id*. After 48 hours without a probable-cause determination, "the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance," and intervening weekends do not qualify as the latter. *Id*. at 57. In other words, a delay of more than 48 hours presumptively violates the Fourth Amendment. *Powell v Nevada*, 511 US 79, 83-84; 114 S Ct 1280; 128 L Ed 2d 1 (1994).

After *Gerstein* but before *McLaughlin*, this Court addressed a related but distinct state-law question in *Cipriano*. By statute, Michigan requires that an arrestee be brought before a magistrate for arraignment "without unnecessary delay." MCL 764.26. *Cipriano*

7

addressed whether a violation of this statute required suppression of a confession obtained

during an unnecessary prearraignment delay. *Cipriano*, 431 Mich at 319.[4] The Court held

that unnecessary delay does not mandate exclusion. *Id*. at 335. Instead, delay is *one* factor,

considered among the totality of the circumstances, for evaluating the voluntariness of a

confession. *Id*. at 333-334. While prolonged prearraignment delay "should be a signal to

the trial court that the voluntariness of a confession obtained during this period may have

been impaired," an otherwise voluntary confession should not be excluded solely due to

this delay. *Id*. at 335. *Cipriano* enumerated a nonexhaustive list of factors that a trial court

should consider in a voluntariness inquiry:

---

[4] Sanders asserts that *Cipriano*'s statement that "the prompt-arraignment requirement was never elevated by the United States Supreme Court to the level of a constitutional right," *Cipriano*, 431 Mich at 332, is contrary to *Gerstein*. It's clear, however, that *Cipriano* was drawing a distinction between an arraignment and a probable-cause determination. See *id*. at 324 n 9 ("The statutory right to prompt arraignment without unnecessary delay should not be confused with the Fourth Amendment requirement of a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest without a warrant."), citing *Gerstein*, 420 US at 114. While jurisdictions may "combine probable cause determinations with arraignments," *McLaughlin*, 500 US at 58—a common practice in Michigan—they are not synonymous proceedings. See MCR 6.104(D) ("If an accused is arrested without a warrant, a complaint . . . must be filed at or before the time of arraignment. On receiving the complaint and on finding probable cause, the court must either issue a warrant or endorse the complaint as provided in MCL 764.1c. Arraignment of the accused may then proceed . . . ."). See also *Riney v State*, 935 P2d 828, 833 (Alas App, 1997) ("It is important to understand that the hearing required under the Fourth Amendment by *Gerstein* and *McLaughlin* is not the same thing as an 'arraignment' or an 'initial appearance'."). The purpose of a probable-cause determination is to provide a neutral judgment that legal justification exists for an arrest, *Gerstein*, 420 US at 114, while the purpose of an arraignment is to provide defendants with notice of the charges brought against them and to allow them to enter a plea, *People v Nix*, 301 Mich App 195, 208; 836 NW2d 224 (2013). *Cipriano*'s pronouncement is therefore not inconsistent with *Gerstein*.

8

[T]he age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse. [*Id*. at 334.][5]

As noted, *Cipriano* preceded the decision in *McLaughlin*. In *Manning*, 243 Mich App at 626-627, the Court of Appeals considered the interplay between the two cases. *Manning* observed that Michigan courts had yet to address the legal impact of a Fourth Amendment violation under *McLaughlin* on statements made during the unreasonable delay. *Id*. at 638. The *McLaughlin* decision, *Manning* opined, "does not supplant" *Cipriano*; rather, the two opinions "dovetail." *Id*. at 617. The *Manning* Court held that a *McLaughlin* violation does not automatically require suppression of a confession obtained during the delay. *Id*. at 642. Such a rule, *Manning* reasoned, "would not further the primary purpose of the exclusionary rule." *Id*. Instead, the *McLaughlin* violation—and hence, the unreasonable delay—is one factor in evaluating the voluntariness of the statement under

---

[5] We have also since identified "any other factual circumstances, psychological effects, and coercive tactics employed by the officers" during interrogation as relevant to a determination of voluntariness. *People v Stewart*, 512 Mich 472, 495; 999 NW2d 717 (2023). Such additional factors include promises of leniency and other interrogation strategies that "tend to undermine a defendant's free will . . . ." *Id*. at 495-496.

*Cipriano*. And, of course, "[t]he longer the delay, the greater the probability that the confession will be held involuntary." *Id*. at 643.[6]

## III. ANALYSIS

Sanders contends that the statements he made during the January 7 interrogation must be suppressed because they were the product of an unconstitutional detention. When a defendant seeks to suppress evidence arising out of an allegedly unconstitutional search or seizure, two separate questions generally must be asked: Did the police conduct violate the defendant's Fourth Amendment rights, and if so, is the remedy of the exclusionary rule appropriate? *Illinois v Gates*, 462 US 213, 223; 103 S Ct 2317; 76 L Ed 2d 527 (1983). We review the answer to these questions de novo, *People v Custer*, 465 Mich 319, 326; 630 NW2d 870 (2001), meaning independently and without deference to the lower courts, *People v Beck*, 504 Mich 605, 618; 939 NW2d 213 (2019).

## A. FOURTH AMENDMENT VIOLATION

The first answer is uncontested here. Sanders's right to be free from unreasonable seizure was violated, as held in *McLaughlin*. He was detained for more than 48 hours following a warrantless arrest without receiving a judicial determination of probable cause, and the prosecution conceded in the trial court that this delay was unjustified. Indeed, Detective Lewandowsky admitted that he thought police officers had 72 hours to bring a suspect arrested without a warrant before a judge for a probable-cause determination. That

---

[6] *Manning* also hinted that, under a different set of facts, "the length of the delay alone may be a sufficient ground to suppress a defendant's statement, particularly where the delay is so inexplicably long that it raises an inference of police misconduct." *Id*. at 645.

belief was contrary to *McLaughlin*'s clear rule, and such a plain legal error is not an extraordinary circumstance justifying delay.

## B. REMEDY

Having established a Fourth Amendment violation, the disputed issue is whether the exclusionary rule—which bars evidence obtained in violation of the Fourth Amendment from admission as substantive evidence in criminal proceedings, *People v Lucynski*, 514 Mich 888, 889 (2024)—applies to the statements made by Sanders while he was unlawfully detained. When applicable, the exclusionary rule covers evidence discovered directly from an illegal search or seizure, as well as so-called "fruit of the poisonous tree" evidence that is derivative of the unlawful conduct. *Utah v Strieff*, 579 US 232, 237; 136 S Ct 2056; 195 L Ed 2d 400 (2016). But "[t]he exclusionary rule does not automatically apply once a court finds a Fourth Amendment violation." *Lucynski*, 514 Mich at 889. Instead, as a judicially created remedy, "application of the exclusionary rule properly has been restricted to those situations in which its remedial purpose is effectively advanced." *Illinois v Krull*, 480 US 340, 347; 107 S Ct 1160; 94 L Ed 2d 364 (1987). Because the fundamental purpose of the exclusionary rule is to appreciably deter future Fourth Amendment violations, the Supreme Court has held that the rule only applies when the benefits of deterrence outweigh the costs of exclusion on the justice system. *Herring v United States*, 555 US 135, 141; 129 S Ct 695; 172 L Ed 2d 496 (2009).

The Supreme Court has previously declined to resolve whether the exclusionary rule applies in the context of a *McLaughlin* violation. *Powell*, 511 US at 85 n *. Lower federal and state courts have reached differing answers. Some have concluded—like the Court of

11

Appeals in *Manning* and like the prosecution advocates here—that statements made during a *McLaughlin* violation must be excluded only if they are involuntarily made, with the delay in presenting a defendant to a magistrate considered as one factor in that determination. See, e.g., *People v Willis*, 215 Ill 2d 517, 533-535; 831 NE2d 531 (2005); *State v Nissen*, 252 Neb 51, 68; 560 NW2d 157 (1997); *State v Tucker*, 137 NJ 259, 270; 645 A2d 111 (1994). Others, however, have rejected the voluntariness-only approach and held that the remedy for a *McLaughlin* violation is exclusion when the evidence is causally linked to the Fourth Amendment illegality. See, e.g., *Anderson v Calderon*, 232 F3d 1053, 1071 (CA 9, 2000), overruled on other grounds by *Bittaker v Woodford*, 331 F3d 715 (CA 9, 2003); *Powell v State*, 113 Nev 41, 46; 930 P2d 1123 (1997); *State v Huddleston*, 924 SW2d 666, 673-675 (Tenn, 1996).

Sanders argues for the latter approach, insisting that statements must be suppressed if no intervening events broke the causal connection between the unconstitutional detention and the interrogation. To support his position, Sanders discusses the Supreme Court's application of the exclusionary rule to confessions made following an illegal arrest—that is, an arrest lacking probable cause at its outset. In that context, the Court has long held that verbal evidence must be excluded if it is the "fruit" of an unlawful arrest. *Wong Sun v United States*, 371 US 471, 485; 83 S Ct 407; 9 L Ed 2d 441 (1963). This inquiry asks whether the statement was obtained by "exploitation" of the Fourth Amendment violation or, instead, whether it was "sufficiently attenuated" from the taint of the illegal arrest to be admissible. *Brown v Illinois*, 422 US 590, 592, 600; 95 S Ct 2254; 45 L Ed 2d 416 (1975). Described by the Supreme Court as an exception to the exclusionary rule, "[t]he attenuation doctrine evaluates the causal link between the government's unlawful act and the discovery

12

of evidence[.]" *Strieff*, 579 US at 238. When this link is broken, the statements are admissible because they are unaffected by the Fourth Amendment-violative conduct. *Brown*, 422 US at 603. But "[w]hen there is a close causal connection between the illegal seizure and the confession," exclusion of the evidence is warranted because that remedy is "more likely to deter similar police misconduct in the future . . . ." *Dunaway v New York*, 442 US 200, 218; 99 S Ct 2248; 60 L Ed 2d 824 (1979). See also *People v Frederick*, 500 Mich 228, 242-243; 895 NW2d 541 (2017) ("The Supreme Court has repeatedly held that evidence obtained through an illegal search or seizure is tainted by that initial illegality unless sufficiently attenuated from it.").

To determine whether inculpatory statements have been purged of the taint of a Fourth Amendment violation, *Brown* identified several relevant factors, none of which are dispositive: (1) the reading of *Miranda* warnings, (2) the temporal proximity of the arrest and confession, (3) the presence of intervening circumstances, and (4) the purpose and flagrancy of the misconduct. *Brown*, 422 US at 603-604. See also *Dunaway*, 442 US at 217-219 (applying the *Brown* factors to a confession made following an illegal arrest); *Taylor v Alabama*, 457 US 687, 690-694; 102 S Ct 2664; 73 L Ed 2d 314 (1982) (same). Under this framework, the prosecution has the burden of establishing the admissibility of the statements. *Brown*, 422 US at 604.

Although this case does not involve an illegal arrest,[7] it involves an unconstitutional seizure of a different form—a prolonged detention following a warrantless arrest without a judicial determination of probable cause. We hold that the exclusionary rule applies to

---

[7] Sanders does not challenge the legality of the arrest.

13

statements made during a *McLaughlin* violation, but suppression is not required if the prosecution demonstrates that those statements are sufficiently attenuated from the taint of the Fourth Amendment infringement.

Application of the exclusionary rule is appropriate under these circumstances because it would appreciably deter police misconduct. The rule from *McLaughlin* is clear, simple, and easy to apply. At most, compliance requires minimal exercise of discretion by law enforcement officials. Violations can be avoided without difficulty because promptly presenting an arrestee to a magistrate is generally within the control of the detaining agency. And to the extent that the ability to meet this obligation is hindered by factors outside the police's purview, *McLaughlin* allows the government to show that a "bona fide emergency or other extraordinary circumstance" explained the delay. *McLaughlin*, 500 US at 57. All told, where the Fourth Amendment violation stems from an officer's own deliberate error, exclusion is likely to deter future misconduct. Cf. *United States v Leon*, 468 US 897, 921; 104 S Ct 3405; 82 L Ed 2d 677 (1984) ("Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations."). Contrast a *McLaughlin* violation with other Fourth Amendment violations where the Supreme Court has concluded that suppression is unwarranted because there is little to no police misconduct to deter. See, e.g., *id*. at 921-922 (officer reasonably relied on a later-invalidated search warrant issued by a neutral magistrate); *Krull*, 480 US at 342, 349-350 (officer reasonably relied on a later-invalidated statute authorizing warrantless administrative searches); *Arizona v Evans*, 514 US 1, 15-16; 115 S Ct 1185; 131 L Ed 2d 34 (1995) (officer reasonably relied on erroneous information about an outstanding arrest warrant that resulted from an error by a court

14

employee); *Herring*, 555 US at 136-137 (officer reasonably relied on erroneous information about an outstanding arrest warrant that resulted from a negligent police bookkeeping error). By comparison, applying the exclusionary rule to statements made during a *McLaughlin* violation is likely to significantly deter unlawful conduct by police officers who arrest and detain an individual without a warrant.

The Supreme Court's decision in *New York v Harris*, 495 US 14; 110 S Ct 1640; 109 L Ed 2d 13 (1990), does not compel a different result. There, police officers violated the *Payton* rule—that the Fourth Amendment "prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." *Payton*, 445 US at 576; *Harris*, 495 US at 20-21 (applying *Payton*). At issue in *Harris* was whether statements made by the defendant at the police station following this unlawful within-the-home arrest should be suppressed. *Id*. at 17. The Court held that the exclusionary rule did not apply to such outside-the-home statements, so long as probable cause existed to support the arrest. *Id*.

We believe *Harris* is distinguishable from this case in several respects. To start, *Harris* explained that a warrantless arrest of a person in the home but with probable cause does not "somehow render[] unlawful continued custody of the suspect once he is removed from the house." *Id*. at 18. Rather, "[b]ecause the officers had probable cause to arrest Harris for a crime, Harris was not unlawfully in custody when he was removed to the station house, given *Miranda* warnings, and allowed to talk." *Id*. Similarly, *Harris* explained that the attenuation analysis from *Brown* is appropriate only where " 'the challenged evidence is in some sense the product of illegal government activity.' " *Id*. at 19, quoting *United States v Crews*, 445 US 463, 471; 100 S Ct 1244; 63 L Ed 2d 537

15

(1980). Because the outside-the-home statement "was not the product of being in unlawful custody," it was not necessary to consider whether the statement was sufficiently attenuated from the taint of the illegal entry into the home. *Harris*, 495 US at 19.

Here, by contrast, continued detention of Sanders, without a timely probable-cause determination from a magistrate, *was* unlawful. As the Supreme Court has put it, this finding of probable cause is a "condition" or "prerequisite" for prolonged pretrial detention following a warrantless arrest, *Gerstein*, 420 US at 114, 125; see also *McLaughlin*, 500 US at 47, and so without that finding, the detention becomes unlawful with the passage of time. See also *Manuel v Joliet*, 580 US 357, 365; 137 S Ct 911; 197 L Ed 2d 312 (2017) (describing *Gerstein* as holding that "pretrial restraint on liberty is unlawful unless a judge . . . first makes a reliable finding of probable cause"); *Huddleston*, 924 SW2d at 675 ("[I]t is not the arrest that is unlawful in a *McLaughlin* violation, but the detention itself.").[8] An eventual judicial determination that probable cause exists does not retroactively cure the Fourth Amendment violation. Accordingly, when Sanders made the remarks at issue, he was unlawfully detained, and so "the challenged evidence [was] in some sense the product of illegal governmental activity." *Crews*, 445 US at 471. Unlike in *Harris*, therefore, an attenuation analysis is appropriate here to determine whether statements made while wrongfully detained are traceable to the Fourth Amendment violation under *McLaughlin*, or instead whether the taint of illegality has been purged.

---

[8] The prosecution concedes as much, stating that with a *McLaughlin* violation, an arrestee's detention "becomes unlawful with the passage of time[.]"

Further, *Harris* emphasized that suppressing an outside-the-home statement would not serve the purposes of the *Payton* rule—to "protect the physical integrity of the home[.]" *Harris*, 495 US at 17, 20. Exclusion would also have minimal incremental deterrent value as "the principal incentive to obey *Payton* still obtains: the police know that a warrantless entry will lead to the suppression of any evidence found, or statements taken, inside the home." *Id*. at 20. See also *Vale v Louisiana*, 399 US 30, 34-35; 90 S Ct 1969; 26 L Ed 2d 409 (1970) (ordering suppression of the physical fruits of a search of a home that was unlawfully conducted without a warrant, regardless of whether probable cause existed to justify the search). For a *McLaughlin* violation, however, exclusion of causally connected statements would have a far greater deterrent value. Without that remedy, the principal incentive to obey *McLaughlin* would be markedly diminished; so long as the statements were voluntary, the Fourth Amendment violation would go undeterred. But where there is an unreasonable delay in presenting a defendant to a judge for a probable-cause determination and that unlawful seizure taints a statement, exclusion would further the purposes of *Gerstein* and *McLaughlin*—to meaningfully protect against unwarranted pretrial detention. *Gerstein*, 420 US at 114. In sum, verbal evidence obtained during a *McLaughlin* violation must be suppressed, unless the prosecution can show that the statements are sufficiently attenuated from the unconstitutional police conduct. This framework sufficiently deters future Fourth Amendment violations while at the same time ensuring that statements causally unrelated to the violation will not be suppressed.

The prosecution counters that the exclusionary rule is a poor fit for a *McLaughlin* violation. Instead, the prosecution contends that, as held in *Manning,* the proper analysis for this Court to apply is the totality-of-the-circumstances voluntariness inquiry under

17

*Cipriano*. In the prosecution's view, the nature of the violation here—a "timing violation"—necessitates a balancing test consistent with *Cipriano*'s voluntariness factors, not application of the exclusionary rule.[9] We are not persuaded.

While the *Cipriano* factors incorporate the length of detention and the delay in bringing a defendant before a magistrate, they do so only through the lens of determining whether a confession was freely and voluntarily made. But excluding a confession because it is involuntary protects a defendant's Fifth Amendment rights. The Fourth Amendment's exclusionary rule, however, "serves interests and policies that are distinct from those it serves under the Fifth." *Brown*, 422 US at 601. The Fifth Amendment safeguards the right against self-incrimination and protects the accused from "inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Miranda v Arizona*, 384 US 436, 467; 86 S Ct 1602; 16 L Ed 2d 694 (1966). Despite "lingering confusion," the Fifth Amendment's voluntariness inquiry speaks nothing about the causal connection between an unreasonable seizure and a confession. *Dunaway*, 442 US at 219. Rather, "[s]atisfying the Fifth Amendment is only the 'threshold' condition of the Fourth Amendment analysis required by *Brown*." *Id*. Just as *Miranda* warnings "cannot assure in every case that the Fourth Amendment violation has not been unduly exploited," neither can a finding of voluntariness. *Brown*, 422 US at 603.

---

[9] Describing the right at issue as a mere "timing violation" gives short shrift to the Fourth Amendment as interpreted in *Gerstein* and *McLaughlin*. This case is no more about a "timing violation" than the failure to obtain a warrant when required is a paperwork error.

18

Thus, while we agree with *Manning*, 243 Mich App at 642, that a *McLaughlin* violation does not always result in suppression of a statement made during the unlawful detention, *Manning* erred in concluding that a voluntariness inquiry under *Cipriano* sufficiently accounts for the Fourth Amendment interests at play, *id*. at 643. In so holding, *Manning* committed the same error identified in *Brown* and its progeny. We therefore overrule *Manning* to the extent it is inconsistent with our decision today.

## C. GUIDANCE ON REMAND

To assist with the proceedings on remand, we provide some additional direction to lower courts applying the *Brown* attenuation factors in the context of statements obtained during a *McLaughlin* violation. See *Huddleston*, 924 SW2d at 675 (acknowledging that "some modification of the precise application of the factors is necessary to accommodate the differences between an illegal arrest and an illegal detention").

The first factor—which applies only to an attenuation analysis involving verbal evidence—is the presence of *Miranda* warnings. While the reading of *Miranda* rights will generally favor a finding of attenuation, *Miranda* warnings *alone* cannot break the causal connection between Fourth Amendment illegality and incriminating statements. See *Brown*, 422 US at 603. That's because *Miranda* warnings do not inform an individual of their Fourth Amendment rights, including the "right to be released from unlawful custody following an arrest made without a warrant or without probable cause." *Id*. at 601 n 6. If *Miranda* warnings were themselves sufficient to attenuate the taint of an unconstitutional seizure, "the effect of the exclusionary rule would be substantially diluted." *Id*. at 602. See also *Dunaway*, 442 US at 217; *Taylor*, 457 US at 690.

19

Next is the temporal proximity between the occurrence of the *McLaughlin* violation and the inculpatory statements. Analysis of this factor differs from its treatment in the context of an illegal arrest. In the latter situation, the passage of time between an arrest and a subsequent statement *weakens* the causal link. See *Brown*, 422 US at 604; *Taylor*, 457 US at 691. But with an unreasonable delay under *McLaughlin*, the Fourth Amendment violation is ongoing and does not cease until the arrestee is brought before a magistrate for a probable-cause determination. Therefore, as the length of unlawful detention increases, the more likely it is that the statements will not be attenuated from the constitutional violation. See *Huddleston*, 924 SW2d at 675 ("[W]hen the detention becomes unlawful under *McLaughlin,* the passage of time actually makes the violation worse" and "the pressure to confess likely increases with each moment of continuing illegal detention.").[10]

As for intervening circumstances, we do not purport to define the complete set of situations that might contribute to purging the taint of a *McLaughlin* violation on an inculpatory statement made by a detained arrestee. Some examples, however, could include an arrestee's consultation with an attorney or other close adviser before making a statement, *Huddleston*, 924 SW2d at 675; an arrestee's self-initiated or volunteered communication with police, *Anderson*, 232 F3d at 1073-1075; *Chavez v State*, 832 So 2d

---

[10] It should also go without saying that statements made *before* a *McLaughlin* violation cannot be the product of later illegality. See *Crews*, 445 US at 471 (explaining that evidence is suppressible as the fruit of unlawful conduct when acquired "*after* some initial Fourth Amendment violation"); *Huddleston*, 924 SW2d at 675 ("Obviously, if the statement was given prior to the time the detention ripened into a constitutional violation, it is not the product of the illegality and should not be suppressed.").

730, 757 (Fla, 2002); or the discovery by police of an outstanding arrest warrant that justifies detention of the arrestee on other charges, see *Strieff*, 579 US at 240-241.

The last factor, one which is "particularly" relevant, is "the purpose and flagrancy of the official misconduct . . . ." *Brown*, 422 US at 604. This consideration reflects the deterrent purpose of the exclusionary rule "by favoring exclusion only when the police misconduct is most in need of deterrence—that is, when it is purposeful or flagrant." *Strieff*, 579 US at 241. While an "isolated instance of negligence" does not rise to this level, "systemic or recurrent police misconduct" would evince otherwise. *Id*. at 242. After all, "the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct," as well as "recurring or systemic negligence," *Herring*, 555 US at 144, so evidence of a consistent practice of constitutional contravention would support suppression.

On a final note, we reiterate the distinction between a voluntary statement and a statement that is obtained by exploitation of an illegal search or seizure. "Where a Fourth Amendment violation 'taints' the confession, a finding of voluntariness for the purposes of the Fifth Amendment is merely a threshold requirement in determining whether the confession may be admitted in evidence." *Oregon v Elstad*, 470 US 298, 306; 105 S Ct 1285; 84 L Ed 2d 222 (1985). Applied to this context, a finding of involuntariness under *Cipriano* and *Stewart* is an independent basis to suppress a defendant's statements made while detained in violation of *McLaughlin*, but it is not the only one.

21

## IV. CONCLUSION

We hold that the Fourth Amendment's exclusionary rule applies to an arrestee's statements made while detained in violation of *McLaughlin*, but suppression is not warranted if the prosecution establishes that the statements are sufficiently attenuated from the taint of the unlawful conduct. The trial court did not consider this suppression remedy, so we vacate the court's order granting the prosecution's motion and remand for it to determine the admissibility of the challenged statements under this standard. Because voluntariness is a threshold inquiry for admissibility, we express no opinion on whether the trial court clearly erred in its factual findings as to the *Cipriano* and *Stewart* factors. We do not retain jurisdiction.

Kyra H. Bolden
Megan K. Cavanagh
Richard H. Bernstein
Elizabeth M. Welch
Kimberly A. Thomas
Noah P. Hood

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                            No. 167899

JOHN HAROLD SANDERS,

      Defendant-Appellant.

_____

ZAHRA, J. (*dissenting*).

This case presents an interesting question involving the intersection of rights protected under the Fourth and Fifth Amendments to the United States Constitution. Defendant was arrested without a warrant and held in custody pending a hearing before a judge to determine the existence of probable cause. Pursuant to *Riverside Co v McLaughlin*,[1] defendant was entitled to a probable-cause determination no later than 48 hours after his arrest.[2] Defendant's probable-cause hearing, however, was delayed past this 48-hour mark, resulting in a violation of his Fourth Amendment right to be free from unreasonable seizures. Approximately 64 hours after his arrest, defendant was interrogated by police. Before the interrogation, defendant waived his Fifth Amendment right against

_____

[1] *Riverside Co v McLaughlin*, 500 US 44, 56-57; 111 S Ct 1661; 114 L Ed 2d 49 (1991).

[2] "Where an arrested individual does not receive a probable cause determination within 48 hours, the calculus changes. In such a case, the arrested individual does not bear the burden of proving an unreasonable delay. Rather, the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance." *Id*. at 57. The prosecution does not assert that the delay was justified.

self-incrimination guarded by *Miranda v Arizona*[3] and then confessed to killing his infant daughter.

The issue before the Court is what protection should be afforded for a defendant who waives his Fifth Amendment right against self-incrimination while detained in violation of his Fourth Amendment rights. As observed in the majority opinion, the Supreme Court of the United States has declined to address whether an inculpatory statement obtained during an unconstitutional detention must be suppressed,[4] and "[l]ower federal and state courts have reached differing answers."[5] The majority overrules *People v Manning*,[6] and for all intents and purposes cabins *People v Cipriano*,[7] and holds that the exclusionary-rule analysis is required due to the Fourth Amendment violation present in this case. The majority remands the case to the trial court to conduct an attenuation hearing to, in essence, " 'evaluate[] the causal link between the government's unlawful act and the discovery of evidence[.]' "[8]

---

[3] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[4] *Powell v Nevada*, 511 US 79, 84-85; 114 S Ct 1280; 128 L Ed 2d 1 (1994).

[5] Comparing *People v Willis*, 215 Ill 2d 517, 533-535; 831 NE2d 531 (2005), *State v Nissen*, 252 Neb 51, 68; 560 NW2d 157 (1997), and *State v Tucker*, 137 NJ 259, 270; 645 A2d 111 (1994) (all holding the critical inquiry is whether the incriminating statements were voluntary), with *Anderson v Calderon*, 232 F3d 1053, 1071 (CA 9, 2000), overruled on other grounds by *Bittaker v Woodford*, 331 F3d 715 (CA 9, 2003), *Powell v State*, 113 Nev 41, 46; 930 P2d 1123 (1997), and *State v Huddleston*, 924 SW2d 666, 673-675 (Tenn, 1996) (all rejecting the voluntariness-only approach and factoring traditional remedies associated with Fourth Amendment violations, including the exclusionary rule).

[6] *People v Manning*, 243 Mich App 615, 643; 624 NW2d 746 (2000).

[7] *People v Cipriano*, 431 Mich 315, 334; 429 NW2d 781 (1988).

[8] Quoting *Utah v Strieff*, 579 US 232, 238; 136 S Ct 2056; 195 L Ed 2d 400 (2016).

Contrary to the action of the majority, I would not require analysis under the exclusionary rule in this case. The voluntariness inquiry established by this Court in *Cipriano* adequately protects the integrity of the process and the statements obtained during the interrogation. The Fourth Amendment violation arises from the illegal detention of defendant, not from the introduction of evidence obtained during that detention. There are far more suitable remedies available to defendant than suppression of evidence for the violation of his Fourth Amendment right. These alternative remedies will deter wrongful police conduct without imposing the high cost on our criminal justice system of excluding evidence critical to the truth-seeking process of a criminal trial. I would not overrule *Manning* and would instead declare that *Cipriano* applies with equal force subsequent to *McLaughlin*. Accordingly, I dissent.

## I. FACTS AND PROCEDURAL HISTORY

On Friday, January 4, 2013, defendant, John Sanders, brought his three-month-old daughter to the hospital after he claimed she suddenly stopped breathing while the two were left alone. Disturbingly, physicians noted severe brain hemorrhaging, retinal hemorrhaging, and bruising across the infant's scalp. With doctors believing that these injuries were consistent with physical abuse, detectives from the Lansing Police Department questioned defendant, who at that time was not in custody and agreed to participate in an interview with police about what happened to his daughter. Defendant denied responsibility for his daughter's injuries. Nonetheless, believing that they had probable cause, police arrested defendant without a warrant. That same Friday evening, defendant's daughter tragically succumbed to her injuries. The next day, an autopsy was

3

performed on the child, and it was determined that the cause of death was traumatic brain injury, and the manner of death was homicide.

On the following Monday, about 64 hours after defendant's arrest, Detective Mark Lewandowsky conducted another interview with defendant, who proclaimed that he understood his *Miranda* rights and knowingly and freely waived those rights. Detective Lewandowsky confronted him with the autopsy results. At first, defendant claimed that his daughter may have been injured after being tossed into the air and bumping her head on the ceiling, or by falling onto the bed. Ultimately, defendant admitted to shaking his daughter when she would not stop crying. Later that day, a magistrate made a formal finding of probable cause and authorized a criminal complaint against defendant for the death of his daughter.[9]

In December 2013, a jury convicted defendant of felony murder and first-degree child abuse. The Court of Appeals affirmed these convictions, and this Court denied leave to appeal.[10] Defendant successfully moved for relief from judgment in 2019 and was granted a new trial on the basis of ineffective counsel due to his trial attorney's failure to seek the assistance of a medical expert. The prosecution is now retrying defendant on charges of open murder and first-degree child abuse. The prosecution moved to admit defendant's inculpatory statements. Following a *Walker*[11] hearing, the trial judge admitted

---

[9] Detective Lewandowsky testified that it was his understanding that a suspect arrested on probable cause without a warrant had to be brought before a magistrate within 72 hours.

[10] *People v Sanders*, unpublished per curiam opinion of the Court of Appeals, issued April 21, 2015 (Docket No. 320247); *People v Sanders*, 498 Mich 907 (2015).

[11] *People v Walker (On Rehearing)*, 374 Mich 331, 338; 132 NW2d 87 (1965).

the statements after applying current Michigan law pursuant to *Cipriano*,[12] which requires the trial court to consider the totality of the circumstances to ascertain whether the statements were made voluntarily.[13] After thoughtfully considering a myriad of factors, including some factors that weighed in favor of finding the statements involuntary, such as the length of defendant's detention and the unnecessary delay in bringing him before a magistrate, the trial judge found that the totality of the circumstances weighed in favor of finding the statements voluntary and admissible.

Defendant appealed the order to admit these statements, with trial proceedings stayed for the duration of this appeal. The Court of Appeals denied defendant's application for leave to appeal.[14] Defendant sought leave to appeal in this Court, and we ordered oral argument, directing the parties to address:

> (1) the proper analysis for determining whether statements made while detained in violation of the Fourth Amendment under *Riverside Co v McLaughlin*, 500 US 44 (1991), should be suppressed; (2) whether *People v Manning*, 243 Mich App 615 (2000), was correctly decided; and (3) whether the trial court clearly erred in concluding that the defendant's statements were voluntary. See *People v Cipriano*, 431 Mich 315 (1988). [*People v Sanders*, ___ Mich ___, ___; 18 NW3d 511, 512 (2025).]

---

[12] *Cipriano*, 431 Mich at 334.

[13] *Id.*

[14] *People v Sanders*, unpublished order of the Court of Appeals, entered November 20, 2024 (Docket No. 371677).

5

## II. LEGAL ANALYSIS

## A. EXCLUSIONARY RULE

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no [w]arrants shall issue, but upon probable cause . . . ."[15]  The Fourth Amendment is applied to the states through the Fourteenth Amendment.[16]  "The Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands[.]"[17]  The Supreme Court of the United States has, however, established "an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial."[18]  The exclusionary rule exists not as a constitutional right inherent in the Fourth Amendment but rather as a "judicially created remedy" that "has been restricted to those areas where its remedial objectives are thought most efficaciously served."[19]  These remedial objectives principally concern "deterring lawless conduct by . . . [law enforcement] officers[.]"[20]

---

[15] US Const, Am IV.

[16] *Mapp v Ohio*, 367 US 643, 655; 81 S Ct 1684; 6 L Ed 2d 1081 (1961).

[17] *United States v Leon*, 468 US 897, 906; 104 S Ct 3405; 82 L Ed 2d 677 (1984).

[18] *Herring v United States*, 555 US 135, 139; 129 S Ct 695; 172 L Ed 2d 496 (2009).

[19] *United States v Calandra*, 414 US 338, 348; 94 S Ct 613; 38 L Ed 2d 561 (1974).

[20] *Wong Sun v United States*, 371 US 471, 486; 83 S Ct 407; 9 L Ed 2d 441 (1963); see also *United States v Janis*, 428 US 433, 454; 96 S Ct 3021; 49 L Ed 2d 1046 (1976) ("If . . . the exclusionary rule does not result in *appreciable* deterrence, then, clearly, its use in the instant situation is unwarranted.") (emphasis added).

The Supreme Court has cautioned that "[s]uppression of evidence . . . has always been our last resort, not our first impulse."[21] It is worth repeating that the exclusionary rule is found nowhere in the Constitution. It is a judicial fiction, created to prospectively protect Fourth Amendment rights by deterring future police misconduct.[22] Since its inception, the Supreme Court of the United States has consistently limited its application with the creation of a wide variety of requirements and exceptions to the general rule to ensure that when the exclusion of evidence results, the remedial objectives of the rule are best served. For example, the Supreme Court has refused to exclude evidence acquired after a Fourth Amendment violation unless that violation "is at least the 'but for' cause of the discovery of the evidence."[23] But "exclusion may not be premised on the mere fact that a constitutional violation was a 'but-for' cause of obtaining evidence."[24] Rather, "but-for causality is only a necessary, not a sufficient, condition for suppression."[25]

Even when a Fourth Amendment violation functions as a but-for cause of the discovery of a piece of evidence, the exclusionary rule does not apply unless the evidence was obtained by *exploiting* the illegality.[26] In other words, the discovery of evidence can

---

[21] *Hudson v Michigan*, 547 US 586, 591; 126 S Ct 2159; 165 L Ed 2d 56 (2006).

[22] *Calandra,* 414 US at 348.

[23] *Segura v United States*, 468 US 796, 815; 104 S Ct 3380; 82 L Ed 2d 599 (1984).

[24] *Hudson*, 547 US at 592.

[25] *Id*.; see also *Wong Sun*, 371 US at 487-488 (declining to hold that "all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police").

[26] See *Brown v Illinois*, 422 US 590, 600, 603; 95 S Ct 2254; 45 L Ed 2d 416 (1975).

7

become sufficiently causally attenuated from the Fourth Amendment violation so as to render the exclusionary rule inapplicable.[27] This causal attenuation analysis is analogous to a proximate-cause analysis.[28] Attenuation is present when either "the causal connection is remote" or when the "interest protected by the constitutional guarantee . . . would not be served by suppression of the evidence obtained."[29]

Attenuation is one of the exceptions to the exclusionary rule that allows for the admission of illegally obtained evidence. For example, the independent-source doctrine applies in the illegal-search context when evidence seized is later discovered through a legal "independent source,"[30] such as a valid search warrant that was not itself secured on the basis of illegally obtained evidence. The inevitable-discovery doctrine "allows for the admission of evidence that would have been discovered even without the unconstitutional source."[31] And the good-faith exception applies when officers seize evidence in reasonable, good-faith reliance on a search warrant that is later proved defective.[32]

In addition to these causal prerequisites and limits on the exclusionary rule, the Supreme Court has refused to apply this judicially created prophylactic rule whenever "the

---

[27] *Strieff*, 579 US at 235.

[28] See *Taylor v Alabama*, 457 US 687, 701; 102 S Ct 2664; 73 L Ed 2d 314 (1982) (O'Connor, J., dissenting).

[29] *Hudson*, 547 US at 593.

[30] *Strieff*, 579 US at 238.

[31] *Id*.

[32] *Leon*, 468 US at 905, 913.

costs of exclusion outweigh its deterrent benefits."[33]  These costs of exclusion include the dangers posed to society by "setting the guilty free and the dangerous at large"[34] as a result of excluding probative evidence against them, as well as undermining " 'the truth-finding functions of judge and jury.' "[35]  The Supreme Court has also scrutinized whether less costly deterrents exist, such as civil remedies.[36]  Finally, given the deterrent nature of the exclusionary rule, the police misconduct deterred by it must generally be "deliberate, reckless, or grossly negligent conduct."[37]

## B.  A SPLIT OF AUTHORITY

Many jurisdictions, including Michigan up to the present, apply a voluntariness test to weigh the totality of the circumstances in determining whether a statement obtained during an illegal detention is voluntarily made.[38]  This test allows a trial court to consider, among other things, the following factors: "the age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional

---

[33] *Strieff*, 579 US at 235.

[34] *Hudson*, 547 US at 591.

[35] *Leon*, 468 US at 907, quoting *United States v Payner*, 447 US 727, 734; 100 S Ct 2439; 65 L Ed 2d 468 (1980).

[36] *Hudson*, 547 US at 598.

[37] *Herring*, 555 US at 144.

[38] See *Willis*, 215 Ill 2d at 536; *Bush v State*, 695 So 2d 70, 124 (Ala Crim App, 1995); *Peterson v State*, 674 NE2d 528, 538-539 (Ind, 1996); *Nissen*, 252 Neb at 68; *Tucker*, 137 NJ at 270; *Cipriano*, 431 Mich at 334.

rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse."[39] When a trial judge finds that these nonexhaustive factors weigh in favor of finding a statement involuntary, exclusion is the appropriate remedy.[40] Notably, this test does not require exclusion on the mere basis of an unnecessary delay in having a probable-cause hearing, but rather only treats this as one factor among others in assessing the voluntariness of a statement.[41]

The Court of Appeals in *Manning* held that this test was consistent with *McLaughlin*, which was decided after *Cipriano*.[42] In doing so, the *Manning* panel held that *Cipriano*, a case interpreting Michigan's prompt-arraignment statute's "without unnecessary delay"[43] language, did not contravene the Supreme Court's Fourth Amendment holding in *McLaughlin*.[44] This part of the *Manning* analysis is undoubtedly correct, as the majority acknowledges in its opinion. *McLaughlin* never addressed the issue of remedy and left it unresolved for other courts to take up. *Manning* took on the issue and

---

[39] *Cipriano*, 431 Mich at 334.

[40] See *id*. at 334-335.

[41] *Id*.

[42] *Manning*, 243 Mich App at 643.

[43] MCL 764.13.

[44] *Id*. at 638.

10

held that the exclusionary rule does not automatically apply to statements made during *McLaughlin* violations, reasoning that the deterrent effects of the rule would not outweigh its costs.[45]  *Manning* also appropriately stressed that a lengthy illegal detention on its own can render a subsequent statement involuntary, thus deterring police departments that would be tempted to detain suspects for as long as it takes to secure a confession.[46]

In contrast to jurisdictions that joined Michigan in employing the voluntariness test, some jurisdictions, and the majority in this case, favor application of the exclusionary rule that requires exclusion of statements made during a *McLaughlin* violation unless they are sufficiently attenuated from that violation.[47]  Factors important in assessing causal attenuation include: (1) the giving of *Miranda* warnings, (2) the temporal proximity between the arrest and the statement, (3) the presence of intervening circumstances, and (4) the purpose and flagrancy of the official misconduct in illegally detaining a suspect.[48] But, as the majority points out, the temporal-proximity factor must be inverted such that where *Brown v Illinois* treats a longer duration between an illegal arrest and a statement as tending to weigh in favor of attenuation, *McLaughlin* violations require treating a longer

---

[45] *Id*. at 642.

[46] *Id*. at 643 ("The longer the delay, the greater the probability that the confession will be held involuntary.").

[47] *Anderson*, 232 F3d at 1071 (CA 9, 2000).

[48] *Id*. at 1072, citing *Brown*, 422 US at 603-604.

illegal detention as weighing against attenuation.[49]  This pertinent distinction demonstrates that application of the attenuation doctrine is ill-suited for a *McLaughlin* violation.

### III.  MY DIVERGENCE WITH THE MAJORITY HOLDING

The majority opinion concludes that the exclusionary rule should apply to statements made during *McLaughlin* violations.  In so holding, this Court overrules *Manning* and renders impotent our voluntariness test developed in *Cipriano*.  As noted by the majority, there is no dispute that defendant's Fourth Amendment rights under *McLaughlin* were violated.  Defendant was detained without a judicial determination of probable cause for over 48 hours and without a bona fide emergency or other extraordinary circumstances to justify this delay.

Nonetheless, I disagree with the majority opinion in concluding that the exclusionary rule must apply absent a well-established exception to it, like attenuation.  I dissent from the majority's conclusion that the deterrent effects of the exclusionary rule outweigh its costs to law enforcement and public safety in cases involving *McLaughlin* violations.  In particular, the *Cipriano* voluntariness test already allows trial courts to weigh *McLaughlin* violations, thus providing ample deterrence without the need to use the "last resort" of suppression under the exclusionary rule.  Moreover, as the Supreme Court of the United States has repeatedly emphasized, the exclusionary rule "exacts an enormous price

---

[49] Cf. *Dunaway v New York*, 442 US 200, 220; 99 S Ct 2248; 60 L Ed 2d 824 (1979) (Stevens, J., concurring) ("If there are no relevant intervening circumstances, a prolonged detention may well be a more serious exploitation of an illegal arrest than a short one.").

from society and our system of justice[.]"[50]  This Court also recognizes the "heavy toll" that exclusion places on the state's justice system.[51]  Accordingly, exclusion is a "heavily handicapped" remedy for a Fourth Amendment violation.[52]  With these considerations in mind, the *Manning* Court correctly held that "[t]he harm caused by excluding a voluntary confession solely on the basis of the delay would outweigh the benefit of this exclusion in deterring unreasonable delays."[53]  This holding should not be overruled.

Given that the exclusionary rule exists to deter official misconduct, determining the incentives for officers to violate the Fourth Amendment is an important step in discerning whether deterrence is needed at all.  In cases involving *McLaughlin* violations, there are few incentives for officers to detain a suspect without a timely probable-cause hearing.  Indeed, when officers arrest a suspect with probable cause, such as they did to defendant in this case, they have virtually no incentive to delay a probable-cause hearing, the purpose of which is to formally confirm the existence of probable cause.  This situation is analogous to the events in *New York v Harris*.[54]  There, the police had probable cause to arrest the defendant but proceeded to do so illegally by entering his home to make the arrest without

---

[50] *Segura*, 468 US at 816; see also *Leon*, 468 US at 907 (describing the exclusionary rule as generating "substantial social costs").

[51] *Cipriano*, 431 Mich at 332.

[52] *Nardone v United States*, 308 US 338, 340; 60 S Ct 266; 84 L Ed 307 (1939).

[53] *Manning*, 243 Mich App at 638.

[54] *New York v Harris*, 495 US 14; 110 S Ct 1640; 109 L Ed 2d 13 (1990).

13

a warrant.[55] The defendant then later made an inculpatory statement at the police station.[56] The Supreme Court of the United States declined to impose the exclusionary rule on such cases, reasoning that officers have no incentive to make warrantless invasions of homes to effectuate arrests with the hopes of later securing jailhouse confessions from those arrested.[57] Similarly, police possess little incentive to delay a probable-cause hearing with the hopes of securing a confession from a suspect when they already have probable cause. When police have little incentive to violate the Fourth Amendment, deterrence has far less utility and is more easily outweighed by the costs of exclusion.

There are also other deterrents that make the "last resort" exclusion remedy unnecessary. For example, the threat of civil liability for violating a suspect's Fourth Amendment rights provides a powerful deterrent that the Supreme Court has recognized as sufficient to deter without resorting to the exclusionary rule.[58] This Court has expressly held that civil remedies are available against the state for constitutional violations.[59] Thus, civil rights suits are available to persons subjected to unreasonably long delays.[60] Thanks to developments in the law since the advent of the exclusionary rule that allow successful plaintiffs to recover attorney fees in addition to damages for constitutional-rights

---

[55] *Id*. at 15.

[56] *Id*. at 16.

[57] *Id*. at 20-21 (explaining that "the police know that a warrantless entry will lead to the suppression of any evidence found, or statements taken, inside the home").

[58] *Hudson*, 547 US at 596-598.

[59] *Bauserman v Unemployment Ins Agency*, 509 Mich 673, 687; 983 NW2d 855 (2022).

[60] *Willis*, 215 Ill 2d at 532, citing 42 USC 1983 (2000) and *Manning*, 243 Mich App at 638.

violations, civil liability offers an effective deterrent to violations of *McLaughlin*.[61]

Moreover, an even greater alternative deterrent exists in the voluntariness test under *Cipriano*. Whenever a detention is prolonged to a coercive point, an inculpatory statement can be suppressed as involuntary.[62] As the *Manning* Court correctly noted, "[a] sufficiently long delay in itself will be enough to make a confession involuntary under *Cipriano*."[63] Hence, police departments across the state are already deterred from detaining suspects for as long as it takes to elicit inculpatory statements from them, without the need to resort to the exclusionary rule. Another point deserving of attention is that the exclusionary rule's heyday occurred during a pre-*Miranda* and pre-*Brown* time.[64] Given that these decisions have created protections for criminal defendants during their time in police custody, the "last resort" exclusionary remedy is not appropriate to extend to new situations like *McLaughlin* violations.

Given that there are few incentives for police to violate *McLaughlin*, and that there are effective alternative deterrents, the costs of excluding evidence outweigh any deterrent benefit suppression may have. As mentioned earlier, some of these costs include the dangers posed to society by releasing dangerous individuals after excluding otherwise

---

[61] See 42 USC 1988.

[62] *Cipriano*, 431 Mich at 334-335.

[63] *Manning*, 243 Mich App at 638.

[64] *Brown*, 422 US at 597, 602-604 (applying the attenuation doctrine of the exclusionary rule—which considers, among other factors, whether *Miranda* warnings were given—to inculpatory statements made in police custody following illegal arrests).

probative and voluntary statements they make.[65]   Other costs include undermining the " 'truth-finding functions of judges and juries' " in criminal trials.[66]  Excessive application of the exclusionary rule allows some guilty defendants to go free,[67] which may generate disrespect for the law and the administration of justice.  Finally, another practical cost is the curtailing of judicial discretion in deciding whether to admit any given inculpatory statement.  As Justice Felix Frankfurter put it, the "conduct of criminal trials cannot be confined within mechanical rules."[68]   Rather, "[i]t necessarily demands . . . a well-established range of judicial discretion . . . in ruling upon preliminary questions of fact."[69]  One such "preliminary question of fact" concerns the voluntariness of any given inculpatory statement.  *Cipriano* allows a trial judge to determine whether a statement is voluntary, with that judge able to consider the effect on voluntariness of the length of detention and unnecessary delays in bringing the accused before a magistrate.[70]  This test appropriately relies on "the learning, good sense, fairness and courage of . . . trial judges," and the test should not be discarded for "mechanical rules"[71] like a 48-hour time limit after which statements are excluded regardless of voluntariness.

---

[65] *Hudson*, 547 US at 591.

[66] *Leon*, 468 US at 907, quoting *Payner*, 447 US at 734.

[67] *Leon*, 468 US at 907.

[68] *Nardone*, 308 US at 342.

[69] *Id*.

[70] *Cipriano*, 431 Mich at 334.

[71] *Nardone*, 308 US at 342.

## IV. CONCLUSION

For the above reasons, I dissent.  I would apply the Court of Appeals' decision in *Manning* and would affirm the trial court's order to admit defendant's inculpatory statements under the voluntariness test supplied by *Cipriano*.

Brian K. Zahra